Jeffrey L. Fazio (146043) (jfazio@dehengsv.com)
Yi Yao (292563) (yyao@dehengsv.com)
**DEHENG LAW OFFICES PC**
7901 Stoneridge Drive, Suite 208
Pleasanton, CA 94588
T: 925-399-5856
F: 925-397-1976

*Attorneys for Plaintiff Jun Wu*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JUN WU, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>RUIXUE SHI, aka SERENA SHI, an individual, COACHELLA VALLEY HOTEL, LLC a California limited liability company, HYDE MORGAN DEVELOPMENT LLC, a Delaware limited liability company, and DOES 1-10, inclusive,<br><br>     Defendants. | No. 20-cv-11799-FMO (GJSx)<br><br>**DECLARATION OF JEFFREY L. FAZIO IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>**DATE:  October 28, 2021**<br>**TIME:  10:00 A.M.**<br>**COURTROOM: 6D**<br>**TRIAL DATE: N/A**<br><br>Hon. Fernando M. Olguin |

I, Jeffrey L. Fazio, declare as follows:

1.      I am Of Counsel with DeHeng Law Offices, P.C. ("DeHeng"), counsel of record for Plaintiffs Ting Peng and Lin Fu in the above-titled action. Except where noted, the testimony set forth in this declaration is based on first-hand knowledge, about which I would and could testify competently in court if called upon to do so.

2.      Plaintiff Jun Wu has been proposed as the Class Representative in this action because he has not only understood, but agreed to discharge, his duties to the proposed Class in the capacity as a Class Representative, and because he has no known conflicts with any proposed Class Member. To the contrary, like every other proposed Class Member, Plaintiff's interests in vigorously prosecuting the claims and obtaining the remedies sought in this action are in harmony with the objectives of every other proposed Class Member.

3.      Nor are my interests or those of any other DeHeng attorney who is working on this case in conflict with the interests of Mr. Wu or the proposed Class. We have vigorously prosecuted this case since its inception, as I have in many other class actions.

4.      The DeHeng firm has devoted substantial resources to the prosecution of this action and will continue to devote the necessary resources and diligence required to prosecute this case through trial and, if need be, on appeal.

5.      In my role as Of Counsel with the DeHeng firm, I am responsible for prosecuting a wide range of complex cases involving claims of breach of contract, tort, trade-secret theft, intellectual property infringement, and other business disputes. Recently, I was appointed Class Counsel in *Peng v. Mastroianni,* No. 9:20-cv-80102 (S.D. Fla.), in which the plaintiffs represent a class of EB-5 investors who paid $500,000 each to become limited partners in a partnership that provided funding for a $99.5 million loan to build a mixed-use commercial development in Jupiter, Florida, but did not receive the return of the principal when the loan matured.

6.     I am also a partner in my own firm, Fazio | Micheletti LLP in Oakland, California ("FM"). FM is a boutique law firm that specializes in representing plaintiffs in complex litigation—primarily class actions and individual cases involving fraud, false advertising, breaches of contract, breaches of fiduciary duty, and unfair business practices—in state and federal courts at the trial and appellate levels in California and in other parts of the United States.

7.     I began the practice of law approximately 30 years ago, and have served as lead and co-lead counsel in a number of large, complex cases, most of which have been class actions.

8.     I earned my law degree in 1989 from New York University, where I was a member of the editorial staff of NYU's Annual Survey of American Law, and worked as an intern at the New York City Office of the Corporation Counsel, followed by an extern law clerk for United States District Judge Miriam Cedarbaum in the Southern District of New York during my second year. While attending University of California at Berkeley, Boalt Hall (Berkeley Law) as a visiting student during my third year of law school, I worked as a research assistant for one of Berkeley Law faculty members, Henry Hecht, and as an extern law clerk for United States District Judge Eugene Lynch in the Northern District of California.

9.     After law school, I worked for two large defense firms in the San Francisco Bay Area (Crosby Heafey Roach & May, P.C., which later merged with Reed Smith LLP, and the San Francisco office of Buchalter Nemer Fields & Younger LLP), where my practice consisted of defending major corporate, municipal, and academic institutions against product liability, civil rights, and securities class actions and derivative suits, as well as other forms of complex business and mass tort litigation.

10.    After joining the San Francisco office of Hancock Rothert & Bunshoft LLP ("Hancock") as Special Counsel in my fifth year of practice, I became lead plaintiffs' counsel in a series of six class actions against Ford Motor Company,

which involved 30 million class members and seven other law firms representing the plaintiffs who alleged that Ford had concealed the defective nature of the Thick Film Ignition ("TFI") modules in millions of vehicles it manufactured and sold throughout the United States.  One of those related actions (*Howard v. Ford Motor Company*) was the subject of a nine-month bifurcated (jury/equity) trial in the Superior Court, Alameda County, as well as a series of appeals and writ petitions. *Howard* resulted in the first—and only—court-ordered automotive recall in a private civil action in U.S. history.

11.    While serving as lead counsel in the TFI litigation, I was responsible for day-to-day litigation activities in the various actions, as well as an array of other litigation-related matters before government agencies, consumer-advocacy groups, and the United States Congress.  Because allegations of fraud on state and federal government agencies was one of the core issues in the litigation, I dealt with current and former officials with the National Highway Traffic Safety Administration ("NHSTA"), the Environmental Protection Agency, and the California Air Resources Board.  As a result of those efforts, NHTSA issued a Special Order in which it found that information we uncovered through discovery in the TFI litigation had been withheld from NHTSA when Ford responded to several investigations that related to the same problem that was at issue in the class-action litigation.  I also worked with the Inspector General for the Department of Transportation when it audited NHTSA in an effort to ascertain how Ford had managed to withhold material information in multiple NHTSA defect investigations, which ultimately resulted in changes in the manner in which NHTSA conducts those investigations.

12.    I have also testified before the California legislature concerning rules of evidence governing the dissemination of information that could affect public health and safety, and I have briefed members of the United States Senate Commerce Committee and their staffs in connection with that Committee's

hearings on highway safety.  In addition, I assisted the Office of the Inspector General of the Department of Transportation with an audit of certain federal agencies' investigative processes, which were exposed as a result of discovery that was conducted in class-action litigation for which I was responsible.

13.   Because of the magnitude of the damages at stake in the *Howard* case, the landmark nature of the judicial recall order that we obtained as a result of prevailing at trial in that case, and the allegations that former regulatory officials had leveled against Ford, the litigation was the subject of a substantial amount of media attention, both within the United States and abroad, for several years.

14.   In early 2001, I became a partner in the Hancock firm and Chairman of the firm's Unfair Competition & Class Action Practice Group, which focused exclusively on the representation of plaintiffs in class actions, derivative litigation, private-attorney-general actions, and other forms of complex litigation.  In that capacity, I managed an array of litigation in state and federal trial and appellate courts in various jurisdictions throughout the United States, including the Judicial Panel on Multidistrict Litigation.  In each, I served as the lead or co-lead counsel for the plaintiffs.

15.   Since 2001 I have lectured on a variety of substantive and procedural issues that arise in consumer class actions, and I helped author the section on Class Actions (and annual updates) in a leading product liability treatise, Automotive Design Liability (West).  In July 2006, I began a three-year term as a member of the board of directors of the Public Justice Foundation (formerly, Trial Lawyers for Public Justice Foundation), and as a member of several Public Justice Foundation Board Committees, including service as co-Chair of its *Cy Pres* Committee.  I am also a member in good standing of the National Association of Consumer Advocates and the Western Trial Lawyers Association.

16.   Shortly before leaving the Hancock firm to create my own firm (FM) with a Hancock colleague, I negotiated the resolution of the TFI litigation with a

settlement valued at $2.7 billion. *See, e.g.,* https://www.sfgate.com/news/article/2-7-billion-Ford-settlement-over-faulty-part-2865639.php. Despite its small size, many of the cases my partner and I handle have big implications for consumers and attract national attention and, unlike other litigation involving the government, we have never "coat-tailed" the government in any case; to the contrary, the government has benefited from my firm's litigation efforts.

17.    For example, in *Wilson v. Airborne Health, Inc.,* No. 07-cv-0770 (C.D. Cal.)—a nationwide class action in which FM served as co-lead counsel with the Center for Science in the Public Interest, we prosecuted claims the defendants for falsely advertising a product that promised to cure the common cold before the government became involved. The U.S. Federal Trade Commission ("FTC") and at least 32 state attorneys general filed cases against the *Airborne* defendants **after** the settlement agreement that my partner and I negotiated was nearly final. Moreover, the FTC and the AGs relied in part on the discovery we obtained while prosecuting the *Airborne* class action as the evidentiary basis for their settlements with the defendants.

18.    FM was primarily responsible for developing and implementing the litigation and settlement strategies in a case against Airborne Health, Inc., which claimed its dietary supplement could prevent the common cold. The Airborne litigation resulted in the creation of a $23.3 million non-reversionary compensation fund, which was the largest settlement of a false-advertising case at that time. The FTC's settlement was little more than an adjunct to the settlement we achieved in the *Airborne* class action. In short, the FTC agreed to settle with the Airborne defendants in exchange for injunctive relief (essentially, an order prohibiting the defendants from engaging in the same type of fraudulent conduct again, after such conduct had already ceased). And although the FTC settlement included the potential for an additional monetary award of $6.5 million, the defendants' liability for that aspect of the settlement agreement was conditioned on the exhaustion of

**-6-**

the $23.3 million dollar fund created by the settlement I negotiated. *See* http://www.ftc.gov/opa/2008/08/airborne.shtm. Because funds remained in the Airborne settlement fund after we paid 100% of the eligible claims, however, that condition was never satisfied. Similarly, the 32 state AGs settled their claims for a total of $7 million—again, well after our settlement was final.

19.    The government has benefited from our efforts in other litigation as well. FM served as lead counsel in *Trew v. Volvo Cars of No. Am., LLC,* No. 05-cv-1379 (E.D. Cal.), a class action involving defective electronic throttle modules ("ETMs") installed in several hundred thousand Volvo vehicles sold in the 1999 through 2001 model years. The case fueled investigations by the California Air Resources Board ("CARB"), the Environmental Protection Agency ("EPA"), and NHTSA. FM assisted CARB and NHTSA with their investigations while FM litigated the private civil action by, among other things, providing those agencies with material information that Volvo had withheld from them, which we obtained in discovery and our independent investigation efforts.[1]

20.    The *Trew* class action led to government action and a settlement that, together, provided class members with an extended ETM warranty of 10 years/200,000 miles, reimbursed thousands of current and former Volvo owners and lessees for the money they paid to replace or clean defective ETMs (which cost as much as $1,200 each to replace), reimbursement for certain towing or rental car expenses, and a safety recall initiated by NHTSA.

---

[1] FM's efforts in the Ford TFI litigation (discussed above) produced similar results. There, the National Highway Traffic Safety Administration ("NHTSA") issued a Special Order after we demonstrated that Ford had withheld material information in connection with nearly a half dozen NHTSA defect investigations. At the end of that inquiry, NHTSA concluded that Ford had, indeed, withheld material information during the course of the investigations in question and modified the manner in which defect investigations were conducted thereafter as a result of its findings.

21.     In a nationwide consumer class action against Apple Inc., FM was appointed co-lead counsel and I negotiated a $53 million non-reversionary cash settlement, which resulted in settlement class members received *more* than 100% of the funds they lost as a result of Apple's improper refusal to honor their warranty claims.

22.     More recently, FM was appointed as co-lead counsel in a nationwide consumer class action against Toyota Motor Corporation for concealing the existence of a safety defect in a component that costs an average of $3,000 to replace in more than 800,000 Prius and Prius *v* hybrid vehicles.

23.     A summary of cases comprising my relevant litigation experience over the past 25 years is set forth below:

- ***In re Apple iPhone/iPod Warranty Litig.*** (N.D. Cal.)
  Co-lead class counsel in nationwide class action resulting from Apple's use of Liquid Submersion Indicators (small pieces of dye-laden material with properties similar to litmus paper) ("LSIs") to deny warranty claims by representing to customers that a red or pink LSI established that they had damaged their iPhone or iPod by exposing it to liquid, thereby voiding all applicable warranty coverage. Negotiated $53 million non-reversionary cash settlement, which resulted in class members receiving an average benefit that amounted to *117%* of their average losses—meaning that average class members received a larger recovery from the settlement than the amounts they actually lost. (Defense counsel: Morrison Foerster LLP)

- ***McCarthy v. Toyota Motor Corp.*** (C.D. Cal.)
  Co-lead class counsel in nationwide consumer class action involving alleged fraudulent concealment of defects in approximately 800,000 Prius and Prius *v* hybrid vehicles. (Defense counsel: Morgan Lewis LLP, Bowman and Brooke LLP)

- ***Chen v. Knabb*** (Cal. Super. Ct., Alameda Cty.)
  Counsel for Plaintiff in shareholder-derivative action based on board of directors' approval of sale of $10 million of stock in Pegasus Wireless Corporation to Pegasus's CEO and subsequent repurchase of stock for the original sale price after stock price plummeted from $8 to less than $1 a share. Case was among several shareholder-derivative suits and shareholder class actions based on alleged director misconduct, but the only one to survive two bankruptcy petitions and multiple dispositive motions that led to dismissal of other actions.  Although key Defendants (former Pegasus CEO and CFO) failed to respond to service and were subsequently found liable for stock fraud in SEC action and jailed for criminally violating federal securities laws, Fazio Micheletti successfully negotiated the settlement of all claims. (Defense counsel: Fenwick & West LLP)

-8-

- ***Wilson v. Airborne Health, Inc.*** (C.D. Cal.)
  Co-lead class counsel in nationwide class action involving false-advertising and consumer-deception claims against seller of Airborne Effervescent Health Formula. Defendants marketed the product as a "Miracle Cold Buster" and claimed that the second-grade school teacher who "invented" Airborne actually discovered a cure for the common cold. Case was resolved by a settlement agreement that created a fund of more than $23.3 million—then a record-setting amount for a false-advertising case—which was used to reimburse consumers who purchased Airborne without the need for proof of purchase; remainder of funds distributed *cy pres* to non-profit organizations that benefit consumers nationwide. (Defense counsel: Weil Gotshal & Manges LLP and Nevers Palazzo Maddux & Packard LLP.)

- ***Howard v. Ford Motor Co***. (Cal. Super Ct., Alameda Cty.)
  Lead class counsel in 30-million-member class action based on defendant's violations of Consumers Legal Remedies Act and Unfair Competition Law by concealing safety-related defect from government regulators and millions of consumers. Case was one of six related actions pending throughout the United States, which involved appearances before several federal courts, including the Judicial Panel on Multidistrict Litigation and the Ninth Circuit Court of Appeals, as well as the California Court of Appeal (three times) and the California Supreme Court (twice). Equity phase of trial resulted in the first judicially-mandated automotive recall in a private lawsuit in U.S. history, and an order requiring Ford to provide restitution to all California class members. Case was resolved on favorable terms in nationwide settlement, including full reimbursement of repair and replacement costs without the need for receipts or other proof of purchase, a warranty extension (from five years or 50,000 miles to 10 years or 100,000 miles), and the establishment of a $5 million fund for use in conducting safety research by George Washington University's National Crash Analysis Center. (Defense counsel: O'Melveny & Myers LLP; Snell & Wilmer LLP, and Wheeler Trigg & Kennedy LLP.)

- ***Glover v. Mahrt*** (Cal. Super. Ct., Alameda Cty.)
  Lead counsel for plaintiffs in class action based on defendant's false and deceptive advertising of organic eggs sold at premium prices. Case was resolved by settlement, pending judicial approval. (Defense counsel: Downey Brand LLP.)

- ***Morris v. Branca*** (Cal. Super. Ct., Los Angeles Cty.)
  Co-lead counsel for plaintiffs, the former manager and President/Chief Operating Officer of The Michael Jackson Company ("TMJC") and three advisers to Michael Jackson, in action alleging breach of joint-venture agreement that led to the formation of and distribution of ownership interests in TMJC. Case pending. (Defense counsel: Kinsella Weitzman Iser Kump & Aldisert LLP; Hoffman Sabban & Watenmaker, APC; and Martin Greines Stein & Richland LLP.)

- [***United States, ex rel. v. DoD Contractors***] (C.D. Cal.)
  Lead counsel for *qui tam* relator in action alleging that defendant defense contractors violated federal False Claims Act by selling defective counterfeit electronic components to U.S. Department of Defense for use in missile-defense systems, fighter aircraft, and military helicopters. (Case pending under seal.)

- ***Carden v. General Motors Corp***. (Cal. Super. Ct, Santa Clara Cty.)
  Co-lead class counsel (with Wilson Sonsini Goodrich & Rosati LLP) for plaintiffs in statewide (240,000-member) private-attorney-general action based on defendant's violations of California's Unfair Competition Law and Consumers Legal Remedies Act. Case resolved on favorable terms for plaintiffs.  (Defense counsel:  Bingham McCutchen LLP and Sedgwick Detert Moran & Arnold LLP.)

- ***Wornow v. Register.com, Inc.*** (N.Y. Sup. Ct.; N.Y. Super. Ct. App. Div.)
  Lead class counsel in class action based on defendant's unlawful and deceptive billing practices. Case was resolved by settlement after appeal, which provided for a $2-million claims fund for reimbursement of class members, and established a *cy pres* fund that resulted in distribution of approximately $700,000 to Computers for Youth, a New York-based non-profit organization that provides computers and technology education to under-privileged children in the New York area. (Defense counsel: Skadden Arps Meagher Slate & Flom LLP.)

- ***Trew v. Volvo Cars of North America, LLC*** (E.D. Cal.)
  Co-lead class counsel in nationwide class action based on fraudulent concealment of safety defect in Electronic Throttle Module ("ETM") in nearly half a million Volvo cars and light trucks, in violation of California's False Advertising Law, Unfair Competition Law, and Consumers Legal Remedies Act. Case was resolved on favorable terms for plaintiffs: Volvo agreed to reimburse all current and former owners of affected vehicles with 100 percent of all costs they incurred in connection with repair or replacement of ETMs (which cost up to $1,200 each), up to $50 in towing or car-rental charges, and an extension of the ETM warranty to 10 years or 200,000 miles. (Defense counsel:  O'Melveny & Myers LLP.)

- ***Bauer v. Toyota Motor Sales Corp.*** (Cal. Super. Ct., Los Angeles Cty.)
  Sole counsel for plaintiffs in nationwide class action based on violations of Consumers Legal Remedies Act and Unfair Competition Law in connection with sale of vehicles with defective windshields (which crack spontaneously or with slight impact), costing up to $1,200 to repair. Case was resolved on favorable terms in nationwide settlement: All class members entitled to full reimbursement for windshield repairs and to a warranty extension that virtually doubled class members' coverage.  (Defense counsel: Quinn Emanuel Urquhart & Sullivan LLP.)

- ***Daniel v. Am Honda Motor Co.*** (Cal.  Super. Ct., Los Angeles Cty.)
  Lead class counsel in nationwide class action based on violations of California Consumers Legal Remedies Act and Unfair Competition Law in connection with sale of vehicles with defective windshields (which crack spontaneously or with slight impact), costing up to $900 to repair. Case was resolved on favorable terms in nationwide settlement: All class members entitled to full reimbursement for windshield repairs and to a warranty extension that virtually doubled class members' coverage. (Defense counsel: Lewis Brisbois Bisgaard & Smith LLP.)

- ***Davis v. Am. Honda Motor Co.*** (Cal. Super Ct., Placer Cty.)
  Represented Center for Auto Safety as co-counsel with Trial Lawyers for Public Justice in challenge of order sealing record containing sanctions decision. Sanctions were imposed against defense expert in product liability case; expert was found to have destroyed evidence, which led to striking of

-10-

1  defendant's answer. Sanctions decision was sealed as part of global
settlement with plaintiff, but sanctioned expert then used sealing order as a
basis for refusing to answer questions about destruction of evidence and as a
threat against lawyers asking questions about sealed sanctions order. Motion
granted, record unsealed, and order issued clarifying that sanctions order
cannot be used offensively.  (Defense counsel: Loeb & Loeb LLP.)

- ***Mattison v. eBay, Inc.*** (Santa Clara Super. Ct.)
Co-lead counsel (with Cuneo Law Group) in nationwide class action based
on alleged billing fraud and termination of membership without providing
proper notice and opportunity to defend against charges that led to
termination. Case settled on behalf of individual representatives only, and
resolution included changes in certain disclosure statements and satisfaction
of named plaintiffs' claims only. Plaintiffs' counsel donated approximately
$250,000 in fees and litigation expenses to non-profit consumer-advocacy
organizations. (Defense counsel: Cooley Godward LLP.)

- ***Hernandez v. [Anonymous] Bank*** (Milwaukee Cir. Ct.)
Lead counsel for plaintiffs in action alleging financial institution engaged in
fraud and breached mortgage agreements by terminating interest payments
on tax and insurance impound accounts. Case was resolved by settlement that
reinstated interest payments and provided 100 cents on the dollar for all
missed interest payments to all affected mortgagees.  (Defense counsel:
Reinhart Boerner & Van Dueren S.C.)

- ***CNX Media, Inc. v. Travelocity, Inc.*** (Cal. Super Ct., San Francisco Cty.)
Co-counsel for plaintiff media company in case against former corporate
parent involving claims of unfair competition, breach of contract, and breach
of fiduciary duty. Case was resolved on favorable terms by settlement.
(Defense counsel:  Gibson Dunn & Crutcher LLP.)

- ***McDermott v. Mark Nutritionals, Inc.*** (Cal. Super Ct., San Francisco Cty.)
Lead counsel in statewide class action based on defendant's violations of
Consumers Legal Remedies Act and Unfair Competition Law in connection
with marketing and sales of "overnight" weight-loss product. Case stayed
after Food and Drug Administration intervened as a plaintiff and defendant
filed petition for bankruptcy. (Defense counsel: Morrison | Foerster LLP.)

- ***In re Tobacco II Cases*** (Cal. Supreme Court)
Counsel for Public Citizen, Inc., and the Center for Auto Safety as *amicus
curiae* in support of plaintiffs/appellants in appeal challenging order
dismissing claims under California's Unfair Competition Law on grounds
that Proposition 64 imposed strict new standing and reliance requirements,
and mandated that named plaintiff's claims must be identical to those of
proposed class members.

- ***Graham v. DaimlerChrysler Corp.*** (Cal. Supreme Court)
Counsel for Friends of the Earth as *amicus curiae* in case involving challenge
to the application of catalyst theory of fee recovery in cases that benefit the
public at large.

1    24.    Attached to this declaration as **Exhibit A** is the proposed Notice to the

2    Class, which Plaintiff proposes to distribute via first-class mail and by various

3    electronic media, including email and WeChat.

4          I declare under penalty of perjury under the laws of the United States of

5    America that the foregoing is true and correct and that this declaration was executed

6    at Danville, California, on September 24, 2021.

7                                    _____/s/ *Jeffrey L. Fazio*_____

8                                           Jeffrey L. Fazio

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JEFFREY L. FAZIO IN SUPPORT OF MOTION FOR CLASS CERTIFICATION



EXHIBIT A

**NOTICE TO ALL INDIVIDUALS WHO INVESTED IN THE PALM SPRINGS LUXURY HOTEL INVESTMENT PROJECT (ALSO KNOWN AS THE HYDE HOTEL AND RESIDENCES COACHELLA VALLEY)**:

You may be a member of the Plaintiff class in the above-entitled class action. If you are a member of the Plaintiff class, you should read this notice because it will affect your rights.

**THIS NOTICE IS NOT AN EXPRESSION OF ANY OPINION BY THE COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY EITHER SIDE IN THIS LITIGATION. THE SOLE PURPOSE OF THIS NOTICE IS TO INFORM YOU OF THE LAWSUIT SO THAT YOU CAN MAKE AN INFORMED DECISION AS TO WHETHER YOU SHOULD REMAIN IN OR OPT OUT OF THIS CLASS ACTION**.

**NOTICE OF CLASS ACTION**

**This is Not a Solicitation from a Lawyer.
It is an Official Notice That Has Been Authorized
by the United States District Court for the Central District of California.**

**If you invested in the Palm Springs Luxury Hotel Investment Project (also known as the Hyde Hotel and Residences Coachella Valley) (hereinafter, the "Coachella Project")—but have <u>not</u> entered into an agreement to settle, waive, or otherwise resolve your claims against the Defendants, Ruixue Shi, Coachella Valley Hotel, LLC ("CVH"), and Hyde Morgan Development LLC ("Hyde Morgan")—you are a member of the Class certified by United States District Judge Fernando M. Olguin in the above-titled action. The purpose of this Notice is to advise you of your rights as a class member.**

A class-action lawsuit is pending in the United States District Court for the Central District of California, captioned *Jun Wu v. Ruixue Shi, et al.*, Case No. 2:20-cv-11799 (the "Lawsuit"). In the Lawsuit, the named Plaintiff alleges, among other things, that in 2015, Defendant Ruixue "Serena" Shi conceived of a scheme to defraud investors by offering to sell units in the Coachella Project, a luxury hotel and condominium project, that would be built on a 47-acre land in Coachella, California, at prices approximately ranging from $400,000 to $700,000 per unit.

Defendants told prospective investors that they could buy a unit at the Coachella Project by paying 40% of the purchase price of the total purchase price as a down payment, that Defendants would help each investor pay the balance through financing, and that Defendants would lease back the units from investors for a term of five, ten, fifteen, or twenty years.

Defendant Shi later informed investors that construction was delayed and would begin on March 27, 2017. Defendant Shi also represented to investors that Defendant Hyde Morgan would lease back the condominium units and guarantee an annual payment for at least five years. In reality, the investors never received any lease-back payments because the Coachella Project was never built.

Plaintiff and approximately 100 other investors believed Defendants' pitch and paid a total of more than $26 million, only to discover that Defendants did not own the 47-acre parcel of land on which the Coachella Project was supposed to have been built; that not a single unit had been built; and

1

that not one cent of the investors' money was put in escrow, but was instead secreted away in one bank account after another in an effort to deprive investors of any possibility they would get their investments back.

In an apparent effort to keep investors as quiet as possible, Defendant Shi entered into separate agreements with investors who demanded their money back, which she also failed to honor.

Since then, the Federal Bureau of Investigation has arrested Shi and charged her with criminal fraud in connection with the scam she perpetrated on investors in the Coachella Project.

**If you are one of the investors of the above-mentioned Coachella Project, then you are now a member of the Class. You do not have to do anything further to become or remain a member of the Class. You are not required to submit any documentation to the Court, the attorneys representing the Class, or the Defendants.**

The Court has not decided whether Defendants did anything wrong. There is no money available now, and no guarantee there will be. However, your legal rights are affected, and you have a choice to make now:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **DO NOTHING** | Stay in this Lawsuit. Await the outcome. Give up certain rights.<br><br>By doing nothing, you maintain the possibility of receiving money or benefits that may come from a trial or a settlement of the Lawsuit, but you give up any rights to sue Defendants separately about the same legal claims alleged in the Lawsuit. |
| **ASK TO BE EXCLUDED**<br><br>**("OPT OUT")** | Get out of this Lawsuit. Get no benefits from it. Keep rights.<br><br>If you ask to be excluded, which is known as "opting out" of the Class, and money or benefits are later awarded in the Lawsuit, you will not share in such money or benefits. But you do keep the right to sue Defendants separately about the same legal claims alleged in the Lawsuit. |

Plaintiff must prove the claims against Defendants at a trial or a court proceeding. If money or benefits are obtained from Defendants, you will be notified in a timely manner.

To opt out of the Class, please follow the instructions set forth below in this Notice. The deadline for opting out of the Class is [45 days from the date on which Notice is sent] _____, 2021.

**More information about the Lawsuit and your legal rights and options are discussed in more detail below. (A table of contents and additional information appears on the next page.)**

**If you still have questions after reading the information set forth below, please visit www.CoachellaClassAction.com.**

**THE BASICS** ...........................................................................................................................4

1.      Why did I get this Notice? ...................................................................................4

2.      What is the Lawsuit about? ..................................................................................4

3.      How did the Defendants respond to the Lawsuit? ...............................................4

4.      What is a class action and who is involved? .......................................................5

5.      Why is the Lawsuit a class action? .....................................................................5

6.      Am I a Class Member? ........................................................................................5

7.      Has the Court decided who is right? ....................................................................6

8.      Is there any money or benefits available now? ...................................................6

9.      How and when will a jury or the Court decide who is right? ..............................6

10.     What are Plaintiffs asking for? ............................................................................6

11.     Do I have to attend trial or any other proceeding? .............................................6

**THE ATTORNEYS REPRESENTING THE CLASS** ...................................................6

12.     Does any attorney represent me in the Lawsuit? ................................................6

13.     Should I get my own attorney? ............................................................................7

14.     How will the attorneys representing the Class be paid? .....................................7

**YOUR RIGHTS AND OPTIONS** ................................................................................7

15.     What happens if I do nothing at all? ...................................................................7

16.     Why would I ask to be excluded? .......................................................................7

17.     How do I ask the Court to exclude me from the Class? ......................................7

**OPT-OUT FORM** ..........................................................................................................9

## THE BASICS

**1.      Why did I get this Notice?**

Defendants' records show that you, like the named Plaintiff in the Lawsuit (Mr. Jun Wu), were
among the investors who invested in the Hyde Hotel and Residences Coachella Valley (the
"Coachella Project") by transferring money to Defendants for purchasing a unit at the Coachella
Project, and that your investment has not been returned to you to date.

Accordingly, Plaintiff filed the Lawsuit, in which he made claims on behalf of himself and the
other investors that Defendants' failure to return the funds they invested in the Coachella Project
violated the law. Plaintiff then asked the Court to allow them to present those claims to a single
jury at trial, which is called "certifying" a class action.

The Court granted Plaintiff's request. As explained further below, you have legal rights and
options that you may exercise before the Court conducts the trial. The purpose of the trial is to
decide whether the claims being made on your behalf are correct. Before that happens, you have
the right to choose whether you wish to remain a member of the Class or whether to exclude
yourself from (or "opt out" of) the Class, which is the purpose of this Notice.

**2.      What is the Lawsuit about?**

The Lawsuit is about whether Defendants breached contracts with the investors and were legally
obligated to return the investors' investments in the Coachella Project. Plaintiff contends that
Defendants engaged in false advertising as a means of luring investors into sham investments in
the Coachella Project even though Defendants knew that they had not purchased the land on which
the project was supposed to have been built and had no intention of building the Coachella Project
in the first place.

Plaintiff also contends that Defendant Shi entered into Purchase and Sale Agreements on behalf
of Hyde Morgan or CVH with Plaintiff and each member of the proposed Class at various times
in 2015 and 2016, but Defendants later breached their contracts with the investors. Defendant Shi
aided and abetted, provided substantial assistance, and encouraged those breaches.

Plaintiff alleges that Defendant Shi had used the investors' funds to pay for her lavish lifestyle,
and other Defendants have also benefited from their unlawful conduct.

Plaintiff's current Complaint, which contains their allegations and legal claims, is available on the
Lawsuit website: www.CoachellaClassAction.com.

**3.      How did the Defendants respond to the Lawsuit?**

Defendants have been served with the notice of this Lawsuit but not responded to the Complaint.
The deadline for Defendants to respond has expired.

**4.      What is a class action and who is involved?**

In a class action lawsuit, one or more people called "Class Representatives" (the named Plaintiff in this case, Mr. Jun Wu) sue on behalf of other investors in the Coachella Project who have claims that are the same as or similar to those alleged by the Class Representatives. Together, the Class Representative and the investors he represents are called the "Class," or "Class Members," or as "Plaintiffs." The person (in this case, Ruixue Shi) and the entities who the Plaintiff sued (in this case, the Coachella Valley Hotel, LLC and Hyde Morgan Development LLC) are called the "Defendants."

The attorney who represents the Class is called "Class Counsel" and is appointed by the Court. As discussed below, Class Counsel will be compensated for the time and litigation expenses that are incurred only if the Lawsuit is resolved on terms that are favorable to the Class after a trial or a settlement.

**5.      Why is the Lawsuit a class action?**

The Court decided that this lawsuit can be a class action because it meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. Specifically, the Court made the following findings:

- That there are more than 100 Class Members, and that joining each individual Class Member in a single action would be impracticable;

- That Class Members share common factual and legal issues;

- That the claims Jun Wu has alleged in the Lawsuit are typical of the claims of the rest of the Class;

- That Ting Peng and Lin Fu and the attorneys representing them will fairly and adequately represent Class Members' interests;

- That the common factual and legal questions that must be resolved in this case are more important than the questions that affect only certain individual Class Members; and

- That adjudicating the claims alleged in the Lawsuit as a class action will be more efficient than if they were adjudicated in numerous individual actions.

**6.      Am I a Class Member?**

The Class is composed of all the persons who (**a**) have invested in the Coachella Project but (**b**) have not entered into an agreement to settle, waive, or otherwise resolve your claims against the Defendants, Ruixue Shi, Coachella Valley Hotel, LLC, and Hyde Morgan Development LLC or (**c**) have not excluded themselves from membership in (or "opted out" of) the Class

If you are still uncertain about whether you are included in the Class, please visit the Lawsuit website (www.CoachellaClassAction.com) or contact Class Counsel in the manner described in response to Question No. 12, below.

**7.      Has the Court decided who is right?**

No. By certifying Plaintiff's claims to be tried as a class action, the Court is not suggesting that Plaintiffs will win or lose. Plaintiff must prove his claims at a trial or a court proceeding. Neither the Court nor a jury has yet to decide whether Plaintiff or Defendants are right as to their respective claims and defenses.

**8.      Is there any money or benefits available now?**

No. Neither money nor other benefits will be available unless and until Plaintiff proves their claims at trial or a court proceeding or unless and until the parties agree to a settlement of the Lawsuit. There is no guarantee that money or benefits will be obtained as a result of the Lawsuit. If Plaintiff obtains money and/or other benefits, you will be notified.

**9.      How and when will a jury or the Court decide who is right?**

If Class Members' claims are not resolved by a settlement or otherwise, Class Counsel must prove Plaintiff's claims at trial or a court proceeding. During the trial, a jury or Judge Cannon will hear all the evidence and decide whether Plaintiff or Defendants are right about the claims and the defenses alleged by the parties. There is no guarantee that Plaintiff will win.

**10.      What is Plaintiff asking for?**

Plaintiff is asking for the return of each Class Member's investment, plus interest at the maximum rate allowed by law, and for an award of punitive damages against Defendants.

**11.      Do I have to attend the trial?**

No. You are not required to attend any proceeding conducted by the Court in the Lawsuit, and you are not required to retain your own attorney. If you wish to retain your own attorney to advise you about the Lawsuit or to appear on your behalf before the Court, you have a right to retain an attorney for that purpose at your own expense. Should you decide to retain your own attorney, he or she may enter an appearance in the Lawsuit by providing the Court with the name of the Lawsuit, its case number, and a statement that your attorney wishes to enter an appearance on your behalf.

## THE ATTORNEYS REPRESENTING THE CLASS

**12.      Does any attorney represent me in the Lawsuit?**

All Class Members are represented by Class Counsel. The Court has decided that attorney Jeffrey L. Fazio of DeHeng Law Offices, P.C., in Pleasanton, California, is qualified to represent Class Members in the Lawsuit. Class Counsel has decades of experience representing plaintiffs in class actions and other forms of complex litigation. Please direct any questions you may have to Class Counsel at info@dehengsv.com.

**13.     Should I get my own attorney?**

Having been appointed by the Court to represent the Class, there is no need to hire your own attorney unless you decide to exclude yourself from the Class (which is discussed below).

**14.     How will the attorneys representing the Class be paid?**

Class Counsel will not be compensated for the time, effort, or expenses incurred as a result of prosecuting Class Members' claims unless Class Members prevail in the Lawsuit as a result of a favorable decision by the Court, a favorable verdict by a jury, or by a settlement agreement Class Counsel negotiates with counsel for Defendants.

If and when the Class prevails in the Lawsuit, Class Counsel will ask the Court to award attorney fees and litigation expenses incurred as a result of prosecuting Class Members' claims. If the Court awards attorney fees and expenses to Class Counsel, that award may be paid out of the recovery obtained by the Class or, in the event of a settlement, it may be paid separately by Defendants.

### YOUR RIGHTS AND OPTIONS

**15.     What happens if I do nothing at all?**

By doing nothing, you are effectively choosing to remain in the Class. If you participate in the Lawsuit as a Class Member, however, you will not be able to sue, or continue to sue, Defendants in any other litigation about the same legal claims that are the subject of the Lawsuit. By remaining in the Class, you will be legally bound by the Orders that the Court issues and judgments the Court makes in this class action.

**16.     Why would I ask to be excluded?**

**If you want to maintain your right to be able to bring a separate action for the same legal claims, or have already pursued legal claims against any and want to continue doing so, you must ask to be excluded from, or "opt out" of, the Class.** If you opt out of the Class, you will not receive any money or benefits from this Lawsuit if Plaintiffs prevail at trial or negotiate a settlement agreement (which may or may not be reached) with Defendants.

If you decide to opt out of the Class, you may sue or continue to sue Defendants for the return of your investment in the Coachella Project and for other claims based on the same facts that Plaintiff has alleged in the Lawsuit. Also, if you opt out of the Class, you also will not be legally bound by the judgment entered in this class action.

If you choose to pursue legal action against Defendants after you opt out of the Class, you must hire and pay your own attorney to represent you. Also, if you decide to opt out of the Class, you should speak to an attorney about whether your claims are subject to any statute of limitations.

**17.     How do I ask the Court to exclude me from the Class?**

To opt out, you must notify the Court **in writing** that you wish to opt out of the Class. If you do not want to participate in the Lawsuit, and wish to be excluded from the Class and thereby reserve

your right to sue Defendants in a separate action, you must complete the Opt-Out Form at the end of this Notice and mail the Opt-Out Form to the Clerk of the Court at the address below, so that its postmark is dated no later than forty-five (45) days from the date of this Notice.

**Clerk of the Court**
**United States District Court for the Central District of California**
**United States Courthouse**
**350 W. 1st Street**
**6th Floor, Courtroom 6D**
**Los Angeles, CA 90012**

**DO NOT CALL OR WRITE TO THE COURT OR THE CLERK OF THE COURT. ADDRESS ALL INQUIRIES IN WRITING TO THE ATTORNEYS FOR THE CLASS SET FORTH ABOVE.**

(You may also obtain a copy of the Notice of Non-Participation, as well as other case-related documents, at the Lawsuit website: www.CoachellaClassAction.com).

**OPT-OUT FORM**

I, the undersigned, have read and understand the content of the Notice of Class Action in *Wu v. Shi*, No. 2:20-cv-11799 (C.D. Cal.) (the "Lawsuit").

**I invested in a unit in the Coachella Project on or about the following date, _____, and I have decided to exclude myself from the Lawsuit by opting out of the Class.**

 

 

**Name**: _____

 

 

**Signature**: _____

 

 

**Address**: _____
Street Address and Unit Number

 

_____
City, State, and Zip Code

**Telephone Number**: _____

 

**Email Address**: _____

Mail this Opt-Out Form so that it is postmarked no later than forty-five (45) days from the date of the Notice to the Clerk of the Court at the following address:

**Clerk of the Court**
**United States District Court for the Central District of California**
**United States Courthouse**
**350 W. 1st Street**
**6th Floor, Courtroom 6D**
**Los Angeles, CA 90012**
