Jeffrey L. Fazio (146043) (jfazio@dehengsv.com)
Andre Y. Bates (178170) (aybates@dehengsv.com)
Yi Yao (292563) (yyao@dehengsv.com)
**DEHENG LAW OFFICES PC**
7901 Stoneridge Drive, Suite 208
Pleasanton, CA 94588
T: 925-399-5856
F: 925-397-1976

*Attorneys for Plaintiff Jun Wu*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| JUN WU, individually and on behalf of all others similarly situated, | No. 20-cv-11799-FMO (GJSx) |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT** |
| vs. | |
| RUIXUE SHI, aka SERENA SHI, an individual, COACHELLA VALLEY HOTEL, LLC, a California limited liability company, HYDE MORGAN DEVELOPMENT LLC, a Delaware limited liability company, and DOES 1-10, inclusive, | **Date:** June 9, 2022<br>**Time:** 10:00 a.m.<br>**Judge:** Hon. Fernando M. Olguin<br>**Place:** Courtroom 6D |
| Defendants. | |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................... 1

II.  PROCEDURAL HISTORY .................................................................... 2

III. SUMMARY OF PERTINENT FACTS ................................................. 4

IV. LOCAL RULE 55-1 REQUIREMENTS ................................................ 7

V.  DEFAULT FACTORS ............................................................................ 7

    A.   Prejudice to Plaintiff Would Be Significant. ................................ 9

    B.   Plaintiff's Claims Are Meritorious and Sufficiently Pled. ............ 9

    C.   The Sum of Money at Stake in This Matter. ............................... 10

    D.   There Is No Dispute of Material Facts. ....................................... 11

    E.   Defendants' Failure to Respond Is Not Due to Excusable Neglect. ......................................................................................... 12

    F.   Public Policy Considerations Favor Granting This Motion. ..... 12

VI. CAUSE OF ACTION—BREACH OF CONTRACT ............................ 12

VII. CONCLUSION ..................................................................................... 13

# TABLE OF AUTHORITIES

**PAGE**

*Cases*

*Cripps v. Life Ins. Co. of N. Am.*,
   980 F.2d 1261 (9th Cir. 1992) .................................................................... 9

*Danning v. Lavine*,
   572 F.2d 1386 (9th Cir. 1978) .................................................................... 9

*Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*,
   840 F.2d 685 (9th Cir. 1988) ...................................................................... 7

*Domanus v. Lewicki*,
   742 F3d 290 (7th Cir. 2014) ..................................................................... 11

*Eitel v. McCool*,
   782 F.2d 1470 (9th Cir. 1986) ............................................................ passim

*Elektra Ent. Group Inc. v. Crawford*,
   226 F.R.D. 388 (C.D. Cal. 2005) ................................................................ 9

*Geddes v. United Fin. Grp.*,
   559 F.2d 557 (9th Cir. 1977) .................................................................. 9, 12

*Michael Yang v. Assisted Credit Servs., Inc.*, No. SACV152118AGJCGX,
   2016 WL 10459417 (C.D. Cal. June 21, 2016) ........................................... 8

*Mountain View Surgical Ctr. v. Cigna Health Corp.*,
   No. CV 13-08083 DDP (AGRx) (C.D. Cal. Dec. 10, 2013) ...................... 12

*Oasis West Realty, LLC v. Goldman*,
   51 Cal. 4th 811 (2011) .............................................................................. 12

*Pepsico, Inc. v. Cal. Sec. Cans*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002) ............................................... 10, 12

*Pope v. United States*,
   323 U.S. 1 (1944) ....................................................................................... 7

-iii-

*TeleVideo Sys., Inc. v. Heidenthal*,
    826 F.2d 915 (9th Cir. 1987) .......................................................................... 9

### *Statutes*

Cal. Civ. Code § 3289 ..................................................................................... 11

18 U.S.C § 1343 ............................................................................................... 6

50 U.S.C. App. § 521 ....................................................................................... 7

## I. INTRODUCTION

Pursuant to the Court's instructions, *see* ECF No. 48, Plaintiff Jun Wu hereby submits a further consolidated renewed motion for default judgment against Defendants Ruixue Shi, Hyde Morgan Development LLC ("Hyde"), and Coachella Valley Hotel, LLC ("Coachella"), each of whom has had defaults entered against them as a result of their failure to respond to service of the summons and complaint in this action. Because this is a putative class action, however, Plaintiff must obtain the evidence required to establish that this action meets the criteria for class certification prescribed by Federal Rule of Civil Procedure 23, and to establish the total dollar amount Defendants owe for the purposes of entering default judgment.

As discussed in Plaintiffs' prior motions for default judgment (ECF Nos. 31 & 40) and in the prior motion for class certification (ECF No. 34), Plaintiff had already obtained a significant portion of that evidence, having located 164 potential investors in the Palm Springs Luxury Hotel Investment Project (the "Project"). Since then, Plaintiff's counsel has corresponded with the United States Attorney's Office for the Central District of California (the "US Attorney's Office") regarding sharing information it has obtained regarding the potential investors and offering its resources to assist with the resolution of the related criminal action (*United States v. Shi*, No. CR 20-350-RGK (C.D. Cal.)) (the "Criminal Action") in which Defendant Shi has agreed to pay $22,833,441 in restitution.

Recognizing that the amount may change based on information it may receive, the U.S. Attorney's Office has reserved the right to contest that figure. Accordingly, Plaintiffs have shared the investor information they have collected with the U.S. Attorney's Office and have offered to assist in any way they can, including with efforts to communicate with individual investors, each of whom resides in China.

Plaintiff's counsel and their colleagues in Beijing have continued to collect evidence from individual investors who reside in China. To date, Plaintiff's counsel have communicated with 66 of the investors and have determined that those 66

investors alone are owed approximately $17.5 million. Thus, it stands to reason that the other 98 investors are owed at least that much, which would make the total amount closer to $40 million—nearly twice the amount to which Defendant Shi has agreed to pay in restitution.

Given the amount of time and effort that it has taken Plaintiff's counsel to contact 66 investors to date, however, it seems unlikely that a precise amount of damages Defendants have caused will be known by the time this motion is heard—if ever. Because the Court has wide latitude in calculating damages in the context of a motion for default judgment—particularly where, as here, Defendants have impeded quantification by refusing to cooperate—Plaintiff respectfully requests that the Court either grant this motion and enter default judgment in the amount Plaintiff has determined as of the date of the hearing or, alternatively, postpone the hearing to a date after the July 25, 2022 sentencing hearing to allow Plaintiff's counsel to continue their efforts to determine the total amount Defendants owe.

## II.   PROCEDURAL HISTORY

On December 31, 2020, Plaintiff filed a Complaint against Defendants Shi, Coachella, Hyde, and Global House Buyer Limited, alleging that Defendants are liable for breach of contract, aiding and abetting breach of contract, violations of the False Advertising Law, and violations of the Unfair Competition Law. *See generally* ECF No. 1.[1]

On January 14, 2021, Plaintiff served Hyde in accordance with Rule 4(h)(1)(B), *see* ECF No. 16-1, and filed the proof of service, *see* ECF No. 15. On February 24, 2021, default was entered against Hyde, *see* ECF No. 17, and on March 11, 2021, Plaintiff moved for default judgment against Defendant Hyde, *see* ECF No. 19. Shortly thereafter, the Court vacated the hearing date for that motion and

---

[1] Unable to locate a valid address at which to serve Defendant Global House Buyer Limited with the summons and Complaint, Plaintiff dismissed his claims against that Defendant without prejudice on July 31, 2021, *See* ECF No. 33.

-2-

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT**

took it under submission. *See* ECF No. 23.

On May 14, 2021, Plaintiff served Defendants Shi and Coachella pursuant to Rule 4(c)(3). *See* ECF Nos. 25 & 26. Defendant Shi remains detained in federal prison. *See* ECF No. 40-2 (Declaration of Jeffrey L. Fazio in Support of Plaintiff's Renewed Motion for Default Judgment ("Fazio Decl.")) ¶ 2. After a series of failed attempts to effect service of process on Shi, Plaintiff requested an order on April 2, 2021 directing the United States Marshals Service to serve process upon Shi pursuant to Rule 4(c)(3) in her individual capacity and on behalf of Coachella. *See* ECF Nos. 22 & 22-1. On April 26, 2021, the Court issued an order granting Plaintiff's request and providing as follows:

> The U.S. Marshals Service shall personally serve Defendant Shi in compliance with Federal Rule of Civil Procedure 4 at the Metropolitan Detention Center located at 535 N Alameda Street, Los Angeles, CA 90012. The U.S. Marshals Service shall make the necessary attempts to effectuate personal service until Defendant Ruixue Shi is served.

ECF No. 24.

In May 2021, the U.S. Marshals Service effected personal service of the summons and complaint, along with other case-initiating documents, on Shi in her individual capacity and on behalf of Coachella in accordance with the Court's order. *See* ECF No. 27-1. Shortly thereafter, Plaintiff filed the proofs of service returned by the United States Marshals Service. *See* ECF Nos. 25 & 26. On June 14, 2021, the Clerk entered defaults against Defendants Shi and Coachella. *See* ECF No. 28. Pursuant to ECF No. 29, Plaintiff moved for default judgment against Defendants Shi and Coachella on June 29, 2021. *See* ECF No. 31.

On October 26, 2021, the Court denied both motions for default judgment (ECF Nos. 19 & 31) without prejudice and ordered Plaintiff to file a consolidated renewed motion for default judgment no later than January 6, 2022, and to notice the renewed motion for hearing on February 3, 2022. ECF No. 39.

On April 14, 2022, the Court denied without prejudice Plaintiff's renewed motion for default judgment (ECF No. 40) and Motion to Certify Class Action (ECF No. 34) and ordered that Plaintiff file renewed motions by May 5, 2022. *See* ECF No. 48.

## III. SUMMARY OF PERTINENT FACTS

In 2015, Defendant Shi conceived of and carried out a scheme to defraud investors by offering to sell units in a luxury hotel and condominium project that would be built on 47 areas of land in Coachella, California, called the Palm Springs Luxury Hotel Investment Project (the "Project") at prices that ranged from $400,000 to $700,000 per unit. *See* ECF No. 1 (Complaint) ¶ 1. To date, seven investors have informed Plaintiff's counsel that Defendants offered to sell them condominiums for a per-unit price slightly below $400,000, some of whom purchased more than one unit. *See* ECF No. 40-3 ("Xuan Decl.") ¶¶ 2, 3, 8.

Defendants told prospective investors that they could buy a unit at the Project by paying 40% of the purchase price of the total purchase price as a down payment, that Defendants would help each investor pay the balance through financing, and that Defendants would lease back the units from investors for a term of 5, 10, 15, or 20 years. *See* ECF No. 1 ¶ 2. Moreover, Plaintiff's counsel have learned that Defendants also offered some investors the option to apply for a visa through the EB-5 Immigrant Investor Visa Program, which, at that time, required an investment of at least $500,000. *See* Xuan Decl. ¶ 8.

Defendant Hyde executed a Resort Condominium Purchase and Sale Agreement (the "Purchase Agreement") with the investors, including Plaintiff Wu. The Purchase Agreement provided that Defendant Hyde would (a) lease the condominium units back from the investors; (b) guarantee each investor an annual payment equal to 12% of the total purchase price during the lease-back period (which

1  was a minimum of five years); and (c) repurchase the condominium units from each
2  investor when the lease-back period expired. *See* ECF No. 1 ¶ 19.[2]

3  Defendants also represented to prospective investors that they had purchased
4  three parcels of land (totaling 47 acres) that the Project would occupy, that the land
5  was sufficient to accommodate the Project, that they had acquired all necessary city
6  approvals and permits for construction, and that they estimated that the construction
7  of the Project would be completed by the end of 2016. *See id.* ¶ 20. None of that
8  happened. *Id*.

9  As a result of Defendants false and misleading representations, Plaintiff and
10 about 100 other investors signed the Purchase Agreement and paid more than
11 $26 million in total to Defendants, only to discover that the 47-acre land on which
12 the Project was to be built was not owned by Defendants; that not a single unit had
13 been built; and that not one cent of the investors' money was put in escrow.
14 However, their money was instead secreted away in one bank account after another
15 in an effort to deprive investors of any possibility that they would get their
16 investments back. *See id.* ¶ 3.

17 When Plaintiff and other investors (who are among the members of the
18 proposed class) discovered that construction never started, Defendants offered to
19 refund investors' money if they agreed to execute a document titled "Confidential
20 Termination Agreement and General Release" (the "Termination Agreement"). *Id.*
21 ¶ 33. The Termination Agreement provided that the Purchase Agreement would be
22 terminated, and that Hyde would refund the investment funds within forty-five (45)
23 business days after execution. *See id.*

24 Plaintiff signed the Termination Agreement and is informed and believes that
25

---

26  [2]Appended to the Purchase Agreement are an Exclusive Resort Condominium
27  Buy-Back Agreement (the "Buy-Back Agreement") and a Form of Agreement of
    Lease-Back (the "Lease-Back Agreement"), which included the terms described in
28  paragraphs 23.e. and 23.f. *See* ECF No. 1, Ex. 1, Attachments A & B.

-5-

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT**

a number of other investors also signed the Termination Agreement. *See id.* Currently, Plaintiff's counsel is informed and believes that Defendants had asked many investors to return all documentary proofs of their investments upon signing the Termination Agreement, such as receipts of down payments previously given to the investors by Defendants. *See* Xuan Decl. ¶ 8. This has undoubtedly increased the difficulty of discovery for Plaintiff's counsel. *See* ECF No. 40-2 ("Fazio Decl.") ¶ 8.

Moreover, Plaintiff's counsel is informed and believes that some investors signed a slightly different Termination Agreement, which provided that the Purchase Agreement would be terminated, and that Hyde would refund the investment funds within seven (7) business days after execution, instead of forty-five (45). *See* Xuan Decl. ¶ 8. To date, Plaintiff has not received a refund and has found no evidence that any other investor has received a full refund. *See id.*; *see also* ECF No. 1 ¶ 35.

In June 2020, the Federal Bureau of Investigation ("FBI") filed a criminal complaint against Defendant Shi, alleging that she had collected at least $21.6 million from unsuspecting investors in the project in violation of 18 U.S.C § 1343 (Wire Fraud), based on the same set of facts of the present case. *See* Complaint at 5, *United States v. Shi*, Case No. 2:20-mj-02807-DUTY (CD Cal. June 17, 2020), ECF No. 1.[3]

On October 20, 2021, Defendant Shi entered into a plea agreement in the Criminal Action, agreeing to plead guilty to Count Two of the indictment charging Shi with wire fraud in violation of 18 U.S.C § 1343. *See* Fazio Decl., Ex. B.

On November 1, 2021, Plaintiff's counsel reached out to the U.S. Attorney's Office by email to explain that Plaintiff's counsel possessed a list of investors, described the efforts their Beijing office been undertaking, and offered to provide assistance. *See* Fazio Decl. ¶ 6 & Ex. C. The U.S. Attorney's Office asked for a copy

---

[3] On August 14, 2020, the Court in the criminal case merged the criminal case against Defendant Shi into the docket for the Criminal Action described in Section I, above.

-6-

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT**

of the list and Plaintiff's counsel provided it along with an offer of assistance on November 3, 2021. *See id.*

## IV.  LOCAL RULE 55-1 REQUIREMENTS

On February 24, 2021, default was entered against Defendant Hyde with respect to Plaintiff's Complaint. *See* ECF No. 17. Plaintiff's counsel is informed and believes that Hyde is a Delaware limited liability company; therefore, it is neither an infant or incompetent person. *See* Fazio Decl. ¶ 4. For the same reasons, Defendant Hyde is not in military service, hence the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply. *See id.*

On June 14, 2021, default was entered against both Defendants Shi and Coachella. *See* ECF No. 28. Plaintiff's counsel is informed and believes that Defendant Shi is a competent person who is at least thirty (30) years old. *See* Fazio Decl. ¶ 2. Coachella is a California limited liability company, so it is neither an infant or incompetent person. *See* Fazio Decl. ¶ 3 & Ex. A.

None of Defendants Shi, Hyde, or Coachella has appeared in the present action, either personally or by a representative. In accordance with the Court's instructions, *see* ECF Nos. 18, 29, 39, Plaintiff has served a copy of the present motion on Shi, in her individual capacity and on behalf of Coachella, and on Hyde by U.S. mail on January 6, 2022. *See* Fazio Decl. ¶ 7.

## V.  DEFAULT FACTORS

A default judgement is appropriate where the defendant "has received actual or constructive notice of the filing of the action and failed to answer." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988). Entry of default judgment is completely at the discretion of the trial court. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). Although default judgment may be entered on the papers alone, if the court believes more information is necessary to ascertain damages, it may call for a hearing on the matter. *Pope v. United States*, 323 U.S. 1, 12 (1944).

In determining whether default judgment is appropriate, courts apply the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72 (the "*Eitel* factors").

As demonstrated below, the application of these factors to the facts of the present case reveals that default judgment should be granted after Plaintiff has completed the efforts his counsel have been undertaking to obtain the evidence needed to establish the amount of damages Defendants owe to Plaintiff and the proposed class. *See, e.g.*, *Michael Yang v. Assisted Credit Servs., Inc.*, No. SACV152118AGJCGX, 2016 WL 10459417, at *1–2 (C.D. Cal. June 21, 2016) (discussing reasons default may not be entered until the named plaintiff has, among other things, obtained evidence "that Defendants owe a certain amount of damages" and "until the Court determines that class certification is proper").

Here, Plaintiff submitted his motion for class certification on September 24, 2021, *see* ECF No. 34, which the Court has taken under submission without a scheduled hearing, *see* ECF No. 39. Plaintiff's counsel, along with a legal team at DeHeng Law Offices in Beijing, has determined that 164 individuals appear to have invested in the Project. *See* Xuan Decl. ¶¶ 2–6.

To date, Plaintiff's counsel has received oral statements or documentation regarding investments in the Project (*i.e.*, Purchase and Sale Agreements or other proof of the amount invested) from a total of 66 investors. *See* Xuan Decl. ¶ 7. Based on the information currently available, those 66 investors have lost a total of approximately $17.5 million as a result of Defendants' breaches of contract. *Id.* ¶ 9.

Plaintiff's counsel continues to receive and review information provided by

-8-

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT**

investors of the Project and expect to obtain a closer approximation of the total amount of damages as those efforts proceed. *See id.*; *see also* Fazio Decl. ¶ 8.

### A. Prejudice to Plaintiff Would Be Significant.

Under the first *Eitel* factor, a plaintiff is prejudiced if denied the right to judicial resolution for her claims in the absence of default judgment. *See Elektra Ent. Group Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). That is the case here. Although Defendant Shi has agreed to restitution in a plea agreement with the US Attorney's Office, it is extremely unlikely that anyone outside of China will succeed in locating all putative class members, given that each investor resides there and speaks Chinese as their native language—particularly in light of the amount of time it has taken the Beijing office of Plaintiff's counsel to conduct this painstaking effort. Thus, as a practical matter, putative class members will have no recourse other than judgment by default in this action. *See* Fazio Decl. ¶ 9. This element is, therefore, satisfied.

### B. Plaintiff's Claims Are Meritorious and Sufficiently Pled.

The second and third *Eitel* factors favor a default judgment where the complaint sufficiently states a claim for relief under the liberal pleading standards of Rule 8. *See Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978). Plaintiff fulfills both of these prongs, weighing in favor of issuance of default judgment.

A plaintiff need do nothing further to prove the facts of her case than to appropriately plead the elements of her claim in her complaint. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). The factual allegations of the complaint (except as to the amount of damages) are taken as true upon entry of default. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

Plaintiff's Complaint plainly states every element for a breach of contract claim. *See* ECF No. 1 ¶¶ 42, 50. Plaintiff and the other putative class members fulfilled their obligations under the Purchase Agreement by paying the 40% down

payment. *See id.* ¶¶ 51–52. On behalf of Defendant Hyde, Shi executed the Termination Agreement with Plaintiff, as well as with a number of other investors. *See id.* ¶¶ 33, 34. To date, Defendants never acquired the real property on which the Project was supposed to be built. *See id.* ¶¶ 3, 27. Nor did Defendants refund any investors. *See id.* ¶ 35. As a result, Defendants had breached the Purchase Agreement and the Termination Agreement.

Due to Defendants' breach, Plaintiff and the other putative class members suffered monetary damages, *i.e.*, 40% down payment paid to Defendants. *Id.* ¶ 19.

Thus, Plaintiff has pled all facts necessary to state a claim for breach of contract, has confirmed those allegations by sworn declaration testimony, thereby satisfying the second and third *Eitel* prongs.

### C. The Sum of Money at Stake in This Matter.

In determining the fourth *Eitel* factor—whether the sum of money at stake is reasonable—the Court must consider the amount of money sought in relation to the seriousness of Defendants' conduct. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002).

Here, Plaintiff is seeking the damages caused by Defendants' breaches of contract between Plaintiff and each of the other investors who compose the proposed class Plaintiff will seek to represent by way of a motion for class certification. Because the damage Plaintiff is seeking is the amount of money Defendants wrongfully obtained from Plaintiff and the other putative class members, that amount can only be found to be reasonable.

At this moment, Plaintiff's counsel has received oral statements or documentation from a total of 66 investors regarding their investments in the Project (*i.e.*, Purchase and Sale Agreement) or proofs of payments. *See* Xuan Decl. ¶ 7. Based on the information currently available, the 66 investors, collectively, have lost approximately $17.5 million due to Defendants' breach of contract. *Id.* ¶ 9.

Plaintiff's counsel is informed and believes that the vast majority of these investors signed contracts with Defendants for the purchase of condominiums at the Project at prices that ranged from $400,000 to $700,000 per unit, with approximately seven investors purchasing units at prices between $380,000 and $390,000 per unit. *Id.* ¶ 8. Moreover, Plaintiff's counsel have determined that about ten individuals invested at least $500,000 in the Project as a result of their applications for permanent residence visas through the EB-5 Immigrant Investor Visa Program. *Id.*

Defendant Shi has recently agreed to pay approximately $22.4 million in restitution to her victims, but in light of the fact that Plaintiffs' counsel have determined that only 66 of the 164 investors they have located are owed approximately $17.5 million, it is quite likely that the total amount owed to the entire group of investors is closer to $40 million (plus prejudgment interest, *see* Cal. Civ. Code § 3289). Plaintiff's counsel expect to have more information about damages by the February 3 hearing, and the Court has the latitude to calculate damages based on the information collected to date, particularly in light of the fact that Defendants' refusal to assist those efforts have significantly impeded them. *See, e.g.*, *Domanus v. Lewicki*, 742 F3d 290, 303–04 (7th Cir. 2014) (court has "broad latitude" in calculating damages especially when defendant's own conduct impedes quantification).

Accordingly, Plaintiff respectfully requests that the Court either grant this motion and enter default judgment in the amount Plaintiff has determined as of the date of the hearing, or, alternatively, postpone the hearing to provide Plaintiff's counsel with an opportunity to obtain more information from the investors.

### D.     There Is No Dispute of Material Facts.

As to the fifth *Eitel* factor, courts have held there are no outstanding issues of material fact when a defendant fails to respond to the summons and complaint or make an appearance in the case. And, when the plaintiff's complaint is pled sufficiently, as it is here, "no genuine dispute of material facts would preclude

-11-

granting [Plaintiff's] motion." *Pepsico*, 238 F. Supp. 2d at 1177; *see also Geddes*, 559 F.2d at 560. Here, Plaintiff has filed a complaint that properly alleges breach of contract and appropriate class allegations, and all Defendants have failed to appear or otherwise respond to service. There can be no disputed issues of material fact when Defendants have not appeared in the action and simply have not contested the allegations in the Complaint.

### E. Defendants' Failure to Respond Is Not Due to Excusable Neglect.

There is no excusable neglect under the sixth *Eitel* factor. Shi, Hyde, and Coachella were properly served with the Complaint and Summons by the U.S. Marshals Service as required under Rule 4. Thus, this prong is also satisfied.

### F. Public Policy Considerations Favor Granting This Motion.

The seventh *Eitel* factor of public policy is also satisfied. Although "[c]ases should be decided upon their merits whenever reasonably possible," this is not a requirement. *Eitel*, 782 F.2d at 1472. The existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *Pepsico*, 238 F. Supp. at 1177 (citation omitted).

Defendants' failure to answer or otherwise respond to the complaint "makes a decision on the merits impractical, if not impossible." *Id.* Thus, Plaintiff has no reasonable choice here, except to pursue default judgment. This element also suggests that a default judgment is proper here.

## VI. CAUSE OF ACTION—BREACH OF CONTRACT

"The elements of a breach of contract claims are (1) the existence of a contract, (2) performance or excuse for nonperformance, (3) defendant's breach, and (4) damages." *Mountain View Surgical Ctr. v. Cigna Health Corp.*, No. CV 13-08083 DDP (AGRx), at *3 (C.D. Cal. Dec. 10, 2013) (citing *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)).

As discussed above, through sufficiently pleaded facts in the pleadings and sworn declaration testimony, Plaintiff has proved every element of the breach of

-12-

contract claim. Defendant Shi entered into Purchase Agreements with the investors on behalf of Defendants Hyde or Coachella. *See* ECF No. 1 ¶¶ 42, 50. Plaintiff and the other putative class members fulfilled their obligations under the Purchase Agreement by paying the 40% down payment. *See id.* ¶¶ 51–52. Defendant Shi also executed the Termination Agreement with Plaintiff, as well as with other investors, on behalf of Defendant Hyde. *See id.* ¶¶ 33, 34.

Indeed, Defendants never even acquired the entire lands on which the Project is supposed to be built. *See id.* ¶¶ 3, 27. Nor did Defendants provide a refund to Plaintiff or any of the other investors. *See id.* ¶ 35. As a result, Defendants breached the Purchase Agreement and the Termination Agreement.

Due to Defendants' breaches, Plaintiff and the other putative class members suffered substantial monetary damages.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this motion be granted.

Dated: May 5, 2022                    Respectfully Submitted

**DEHENG LAW OFFICES PC**

/s/ *Andre Y. Bates*
     Andre Y. Bates

*Attorneys for Plaintiff Jun Wu*